IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | CRIMINAL NO. 06-123 (HHK) |
| | : | |
| HENDARMIN MANSOER, | : | |
| | : | |
| Defendant | : | |

**GOVERNMENT'S MEMORANDUM IN AID OF SENTENCING**

The United States of America, through its attorney, the United States Attorney for the District of Columbia, respectfully files this memorandum in aid of sentencing. For the reasons explained below, the government urges the Court to impose a sentence at the top end of the guideline range.

**Background**

On July 19, 2006, the defendant, Hendarmin Mansoer, pled guilty pursuant to a plea agreement to a superseding information charging him with one count of False Making of Visas, Permits and Other Entry Documents and Aiding and Abetting, in violation of 18 U.S.C.§ §1546 and 2. He is scheduled to be sentenced on October 27, 2006. The statutory maximum sentence of imprisonment is ten years. The parties agreed to the United States Sentencing Guidelines calculations utilized in the Presentence Report ("PSR") which correctly calculate the defendant's Total Offense Level to be 16 (after a two-level reduction for Acceptance of Responsibility and an additional one-level reduction for which the government has separately moved pursuant to U.S.S.G. §3E1.1(b)), and the resulting sentencing range to be 21-27 months of imprisonment. The parties have also agreed, pursuant to the plea agreement, that they would not seek any downward

departure from the applicable sentencing range and that a sentence at the top end of the guideline range is reasonable and appropriate - that is, 27 months.

The purpose of this filing is (1) to urge the Court to apply the Guidelines calculation on which the parties and the Probation Office have agreed, and (2) to inform the Court of the nature and impact of the defendant's conduct and the sentencing factors which mandate a sentence of 27 months.

### The Offense Conduct

The defendant sought and obtained employment as a driver of diplomatic personnel at the Embassy of the Republic of Brunei Darussalam from September 1999, to October 28, 2004; the Embassy of the Republic of Benin from November 1, 2004, to June 1, 2005; and the Embassy of the Republic of Jordan from June 20, 2005, to May 12, 2006. At each position he was granted and held an A2 visa allowing him certain privileges one of which was the ability to sponsor domestic helpers.

Beginning from at least June 2001, to May 2006, the defendant Hendarmin Mansoer stole official Embassy letterhead and stamps containing official seals from the Embassy of the Republic of Brunei Darussalam, the Embassy of the Republic of Benin and the Embassy of the Republic of Jordan. Using the stolen materials, the defendant produced sixty-three fraudulent diplomatic personal services contracts for the employment of forty-four foreign nationals. The defendant also stole the passports of embassy employees ( including Ambassadors) and made xerox copies of the stolen passports and accompanying visas to aid in his efforts to fraudulently sponsor applicants.

Each contract was attested to by a fraudulent letter of support, which were produced using official letterhead stolen from the embassies. The letters were addressed to the visa officer at the

United States Embassy and stated that the A-1 or A-2 visa sponsor intended to bring the A-3 applicant to the United States as a housekeeper. The letters stated that the sponsor was employed and had a certain salary and allowance. The letters also asked for assistance in facilitating the application and contained the forged signature of a diplomat and the misappropriated seal stamp of the particular embassy. The letters also contained the forged signature of a person in the Administration and Finance departments at the embassies.

The defendant solicited customers by "word of mouth" in the Indonesian community as well as using brokers. It was well known in certain circles that for the right price Mansoer could obtain a visa. His willingness to sell employment contracts for people to fraudulently obtain visas, in flagrant disregard for the necessary established vetting process that help control aliens' access to this country, opened a wide gap in our borders and created a situation that may well have been taken advantage of by persons seeking to enter into the United States to do harm here, including violent harm. His reputation and advertising went beyond the Indonesian community and spread to the Pakistani community and in early 2006, he attempted to sponsor a person from Pakistan as a domestic worker. As a result of his conduct, a total of forty-four foreign nationals with illegal motives appeared at US Embassies and Consulates and presented fraudulent documents and lied to US officials upon being questioned about their intentions to come to the United States. Nineteen illegal aliens were fraudulently granted visas and allowed to enter this country. The whereabouts and activities of most of them are unknown at this time. The time, money and resources that has to be spent to track down and expel these people from the United States is enormous. The defendant's conduct not only harmed the reputation of his employers; but it had an adverse impact on the honest and hardworking people who want to come to the

United States in a legal manner and follow the rules.

### Recommended Sentence

As a threshold matter the Government understands that application of the United States Sentencing Guidelines is no longer mandatory. However, in United States v. Booker, 125 S. Ct. 738 (2005), the Supreme Court made clear that, in determining the appropriate sentence for a defendant, federal courts should calculate and consider the applicable Guidelines range, refer to the pertinent Sentencing Commission policy statements, and bear in mind the need to avoid unwarranted sentencing disparities. Id. at 764-65. Furthermore, in light of the Supreme Court's mandate that the "district courts, while not bound to apply the Guidelines, must consult those Guidelines and take them into account when sentencing," the continued requirement of written explanations for sentences that fall outside of the range called for by the Guidelines, and the new standard of "reasonableness" review- it is plain that a sentence within the Guidelines, while not required, is reasonable per se. Id. at 767. Not only is a sentence with the Guideline range presumptively reasonable, but it also accommodates the goal, endorsed by both Congress and the Supreme Court, of meting out fair and uniform sentences.

Accordingly, in determining an appropriate sentence for the defendant, this Court should consider not only the nature and circumstances of the offense and the history and characteristics of the defendant, but also the applicable sentencing objectives, that is, that the sentence (1) reflect the seriousness of the offense; (2) promote respect for the law; (3) provide just punishment for the offense; (4) afford adequate deterrence to criminal conduct; (5) protect the public; and (6) effectively provide the defendant with needed educational or vocational training and medical care. Id. at 765; see also 18 U.S.C. § 3553(a)(1) & (2).

In this case, all the facts supporting the proposed sentence have been admitted to by the defendant – and, indeed, in every respect the Guidelines calculation has been stipulated to by him. Moreover, as explained below and made clear in the PSR, no unusual circumstances exist that would warrant an exception to the preference for Guideline sentencing. Therefore, the government respectfully recommends that the Court sentence the defendant within the Guidelines range at level 16.

The stipulated Guidelines calculation in this case properly takes into consideration the seriousness of the criminal conduct to which the defendant has pled guilty. The defendant held a position of power and trust. He abused that position for personal financial gain. The people of the United States and foreign nationals have a right to have immigration rules applied fairly and properly. For a person in Hendarmin Mansoer's position to violate those rules and abuse his power for personal financial gain undermines the integrity of this nation's visa application and review process. It also erodes public trust in the United States immigration system. Moreover, when the controls built into the visa issuance process are evaded – when, in effect, a visa can be "bought" from a corrupt person with access to documents – there is grave risk that persons having harmful motives may make their way into the United States. Hendarmin Mansoer's illegal conduct had consequences even beyond the corrupt issuance of numerous fraudulently-obtained visas in exchange for cash. The several enhancements built into the Sentencing Guidelines for such conduct properly reflect those aggravating factors, and are all suitably applied in this case.

The defendant's early admission of his culpability, and agreement to enter a guilty plea clearly entitle him to the full 3-level reduction available under such circumstances, and the resulting Guidelines level 16 carries a sentencing range of 21-27 months. Because the defendant

has already received substantial favorable consideration, in the form of the plea agreement, and the 3-level reduction under U.S.S.G. §3E1.1, the government submits that 27 months reflects an appropriate balance of the seriousness of the defendant's offense, would promote a respect for the law, provide adequate deterrence and protect the public.

## Conclusion

For all the foregoing reasons, the United States respectfully requests that the Court: (1) accept as advisory the Probation Office's calculation of the Sentencing Guidelines applicable to the defendant, (2) grant the government's separately-filed Motion for a 3-level reduction pursuant to U.S.S.G. §3E1.1(b), and (3) impose a sentence of 27 months within the range.[1]

                    Respectfully submitted,

                    JEFFERY A. TAYLOR
                    United States Attorney
                    D.C. Bar No. 498610

By: _____

                    BRENDA J. JOHNSON
                    Assistant United States Attorney
                    D.C. Bar No. 370737
                    202/353-4154
                    brenda.johnson@usdoj.gov

                    National Security Section
                    555 4th Street, N.W. – 11th Floor
                    Washington, D.C. 20530

---

[1] As to other features of the sentence – such as restitution and supervised release – the government concurs with the provisions of the plea agreement and the PSR, as to all of which the defendant has stipulated.

## CERTIFICATE OF SERVICE

    I hereby certify that a copy of the foregoing was served by fax, to counsel for the defendant:

    Nathan Silver, Esquire
    P.O. Box 5757
    Bethesda, Maryland 20824
    (301) 229-0189

this 23rd day of October, 2006.

                                                                 _____
                                                                 Brenda J. Johnson
                                                                 Assistant United States Attorney