UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

United States of America_____
                                    )          Crim. No. 06-123 (HHK)
              v.                    )
Hendarmin Mansoer,                  )
_____Defendant_____ )

MEMORANDUM IN AID OF SENTENCING

Defendant, through undersigned counsel, respectfully provides the Court with the following information in aid of sentencing.

Defendant notes that the Government has already filed its Motion Pursuant to U.S.S.G. §3E1.1(b) to permit a reduction by one (1) additional level the Adjusted Offense Level under the U.S. Sentencing Guidelines ("USSG"). Further, the Government has filed its Memorandum in Aid of Sentencing ("Memo"). Defendant's counsel has reviewed the memorandum with defendant, who believes it raises several issues which deserve comment.

1. The government's Memo, in its introductory "Background" section, states the parties' agreement with the guidelines calculation of Total Offense Level 16 in the Presentence Report ("PSR") and the resulting sentencing range (21-27 months of imprisonment). It further notes that the parties agree not to seek a downward departure from the USSG. It notes correctly that defendant agrees "that a sentence at the top end of the guideline range is reasonable and appropriate – that is, 27 months." (Memo, p. 2)

2. More accurately, it was the defendant who pledged not to seek a downward departure from the sentencing guidelines. The Plea Agreement, which was expressed in the government's letter to counsel dated June 21, 2006, and made a part of the record on July 19, 2006, the date of defendant's plea hearing, states: "…[Y]our client agrees that

he will not seek any downward departure from the applicable guideline range." (Plea Agreement, page 3)  Further, though the defendant agreed that a sentence at the top end of the guidelines (an anticipated 27 months) would be "reasonable and appropriate," (Id.) the Plea Agreement also stated, "Your client and this Office agree that a sentence within the sentencing range determined pursuant to the United States Sentencing Guidelines would be a reasonable sentence for him in this case." (Plea Agreement, page 2)  In other words, the government's Memo neglects to note that *any* sentence within the guideline range would be reasonable.  The apparent purpose for the concession on what constitutes a reasonable and appropriate sentence is to preclude defendant from appealing from a sentence that is imposed *within* the guideline range; one deduces that purpose from defendant's specific waiver of his right to appeal his sentence under Title 18 U.S.C. §3742 "except to the extent that the Court sentences the defendant to a period of imprisonment longer than the statutory maximum."[1]

    3.  With these thoughts in mind, defendant acknowledges that his commission of the criminal conduct and the dangers it presented.  The Court may consider that defendant's conduct was not designed to permit into this country illegal aliens who would do it harm, and the government has developed no evidence that those who were admitted actually caused this country harm.  Indeed, the people who sought out defendant in order to obtain visas illegally were probably people much like the defendant himself—persons of modest circumstances who sought to come here in order to earn a better living and who were not able to countenance the difficulties and uncertainty of trying to obtain

---

[1] *Quaere* whether or not the waiver would preclude defendant from challenging a sentence as unreasonable if that sentence were above the top end of the appropriate guideline range.  *See United States v. Booker*, 125 S.Ct. 738, 767 (2005); *see also United States v. Dorcely,* No. 05-3130 (D.C. Cir. - decided July 21, 2006).

legally a visa. Most of those who sought visas, defendant believes, were friends or family of persons known to defendant, seeking employment in this country.

    4. Defendant cannot gainsay his financial motive in falsely making these immigration documents. But the Court may consider defendant's own limited income while working at various embassies as having prompted him to become involved with this lucrative, illicit activity. Defendant was earning amounts ranging from $1,600.00 to $1,800.00 monthly during the time he worked for the embassies (PSR, p. 9, ¶51); he believes it may have been even less than that. The defendant's wife was not employed and possibly not employable, because of restrictions, under State Department regulations as defendant understood them, to hold an outside job. In any event, defendant's wife cared for the couple's children while defendant provided income to support the family. Defendant, who has four children[2] and has been responsible for a niece who lives here, had very limited means and found alluring the making and selling of these documents.[3] It's obvious that he should not have acted as he did, but one should remember that defendant, into his late thirties (he is now forty-four years old) had no record of juvenile adjudications or adult criminal conduct. (PSR, page 7, ¶¶36 and 37.)

    5. For the reasons stated above, defendant submits that a sentence at the low end of the guideline range—in other words, a sentence of 21 months—would serve the ends of justice equally well. Defendant faces, and indeed he has waived objections to, removal from this country after he has completed his prison term. Defendant made an early plea, cooperated with the government's investigation and did nothing to impede the

---

[2] Defendant's wife gave birth at the beginning of October 2006 to the couple's fourth child.

[3] The PSR reports that defendant has roughly $25,000.00 of arrearages, a large portion of which creditors have charged off. Further, public records do not reflect real property assets held by defendant. (PSR, page 10, ¶53.)

government's efforts to secure his conviction.  The continued, repetitive nature of his conduct—for which he has faced an enhancement of the base offense level by seven levels[4] (for having produced or been involved with 63 documents)—virtually guaranteed him a lengthy term of imprisonment.[5]

      6.  Finally, defendant requests that the Court allow defendant a set off of 10% (ten per cent) of his total sentence, in this case anywhere from 2.1 to 2.7 months, because he faces deportation and is otherwise not eligible under U.S. Bureau of Prisons regulations for release to the community under Title 18 U.S.C. §3624(c).  *See United States v. Smith,* 27 F.3d 649 (D.C. Cir. 1999).

      This memorandum is,

                                Respectfully submitted,

                                NATHAN I. SILVER/#944314
                                Attorney for Hendarmin Mansoer
                                P.O. Box 5757
                                Bethesda MD 20824-5757
                                (301) 229-0189 (voice & fax)

                                CERTIFICATE OF SERVICE

      I HEREBY CERTIFY that a copy of the foregoing Memorandum in Aid of Sentencing has been served this 25th day of October, 2006, upon Brenda J. Johnson, Esq., asst. U.S. Attorney, National Security Section, U.S. Attorney's Office, 555 4th St. NW, Washington DC 20001,  by electronic transmission under the ECF system.

                                _____
                                *Nathan I. Silver*

---

[4] *See*  USSG §2L2.1(b)(2)(B). (PSR, page 7, ¶28)

[5] Five or fewer documents would not result in an enhancement to the base offense level.  A guideline calculation based on such a number in defendant's case would have resulted in a total offense level of 11, with a Zone C placement and an 8-14 month exposure, half of which may be satisfied by home detention or community confinement, the remainder by actual imprisonment. *See* USSG §5C1.1(d)(2)